CLIFFORD HOLDSWORTH, PETITIONER

*vs.*

GOODALL-SANFORD, INC.

AND

F. EVERETT NUTTER, CLERK AND DIRECTOR

York.  Opinion, October 3, 1947.

*Franklin R. Chesley*, for petitioner.

*William B. Mahoney,*
*Wadleigh B. Drummond,*
*Burns, Blake & Rich,* for respondents.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

THAXTER, J. At the time of the institution of these proceedings the petitioner was the holder of record of 1920 shares of stock of Goodall-Sanford, Inc., which had been bought by him from time to time over a number of years. He had been employed by the corporation and one of its predecessor companies for a long time and had reached a position of responsibility, that of overseer of the yarn department, when his employment was terminated. It is obvious that trouble had arisen between him and his employer; for in July, 1946, the corporation made demand on him for an accounting of certain alleged unlawful and secret profits, and on March 4, 1947 brought action against him for an accounting of the same, in which suit his stock was attached. It was claimed that such stock was bought with the proceeds of such secret profits and was held by him on a constructive trust for the corporation. He was also indicted on a criminal charge in connection with the same transactions. On February 4, 1947 there was a request made to the president of the corporation by Franklin R. Chesley, Esq., the attorney for the petitioner, for an opportunity to examine the corporate books and records. This was submitted to the Board of Directors and was denied March 25, 1947, the board apparently claiming to act under authority of a by-law which provided that "no stockholder shall have any right to inspect any account or book or document of the Corporation, except as conferred by statute or authorized by the Directors or by a resolution of the stockholders entitled to vote." On April 8, 1947, a formal demand was made by the petitioner to inspect the books and records of the corporation. This was denied except as to the records of the stockholders' meetings and the list of stockholders.

On April 11, 1947 this petition for mandamus was filed and on the same day an alternative writ was issued under the terms of which the defendants were commanded to "allow said Clifford Holdsworth, his agents, accountants and attorneys, to have access to and inspect any and all of the corporate books, records, documents or Directors' and stockholders' minutes of said Goodall-Sanford, Inc., and to take copies and minutes therefrom of such parts thereof as concern his interests." There was a discontinuance by the petitioner as to all the respondents except the clerk and the corporation. By them a return to the alternative writ was filed which set up as a justification for the refusal to grant the demand of the petitioner his alleged fraudulent acts which were the basis for the equity suit which the corporation had brought against him. Also it was claimed in the return that the company had the right to refuse the petitioner's demand because of the bylaw above referred to and because the demand to inspect the books and records, other than the record of the stockholders' meetings and the list of stockholders, was not for a proper and legitimate purpose which related to the petitioner's interest as a stockholder, but was designed to discourage and obstruct the prosecution of the action brought by the company against the petitioner. There were other minor allegations made against the petitioner but the above are the fundamental issues on which the case was tried. The petitioner disclaimed any purpose to injure the company in seeking the examination of the books and alleged that he only desired the inspection in connection with his interest as a stockholder.

The learned justice before whom the case was heard found for the petitioner on the issues raised by the pleadings and ordered the peremptory writ to issue as prayed for. The case is now before us on the respondents' bill of exceptions.

The exceptions are twelve in number. In the view which we take of the issues before us, it is unnecessary to con-

sider Exceptions 3, 4, 5, 6, 7, 8, 9, 10 and 11. Exceptions 1 and 2 relate in part at least to the materiality of the respondents' defense and the evidence offered in support of it, that the inspection asked for was for an improper purpose. Exception 12 is to the justice's ruling granting the writ, the question here being as we see it, whether the writ should have been granted in view of the refusal to consider the issues involved in the rulings which gave rise to Exceptions 1 and 2.

R. S. 1944, Chap. 49, Sec. 33, provides that all corporations existing by virtue of the laws of this state shall have a clerk, who is a resident of this state, and a clerk's office where shall be kept the record of all stockholders' meetings and a record showing a true and complete list of all stockholders, their residences, and the amount of stock held by each. "Such records and list of stockholders shall be open at all reasonable hours to the inspection of persons interested, who may take copies and minutes therefrom of such parts as concern their interests, and have them produced in court on trial of an action in which they are interested."

In addition to this statutory right, which applies only to the records of corporate meetings and to the list of stockholders, a stockholder has a right at common law to examine the books, records and papers of a corporation, when the inspection is sought at proper times and for a proper purpose, which it is held must relate to his interest as a stockholder. *White* v. *Manter*, 109 Me. 408; *Withington* v. *Bradley*, 111 Me. 384.

The stockholder's right under the statute is absolute and, provided his purpose in seeking the examination is not vexatious or unlawful, will be enforced by a writ of mandamus even though his motive in applying for the writ may in no way relate to his interest as a stockholder. *White* v. *Manter, supra,* 412; *Withington* v. *Bradley, supra,* 389; *Shea* v. *Sweetser,* 119 Me. 400; *Day* v. *Booth,* 123 Me. 443. For example, in *White* v. *Manter, supra,* the petitioner de-

sired to find out the amount of stock owned by her husband from whom she had been divorced and against whom she had a proceeding pending to determine the amount of alimony.

However, in enforcing the common law right, which gives to the stockholder the power to inspect books, records and papers generally, the court should not only be satisfied that the stockholder's request is made in good faith, but also for the purpose of protecting his rights as an owner of stock, and that to grant the relief will not adversely affect the interests of the corporation. *Varney* v. *Baker,* 194 Mass. 239; *Guthrie* v. *Harkness,* 199 U. S. 148; 38 C. J. 796. He should not be granted a roving commission to pore at will through the books and records of the corporation without regard to the purpose for which he seeks the extraordinary remedy which the law gives to him. 18 C. J. S. 1188. The court may impose reasonable limits on the time, and the place of the examination, and above all should be satisfied that the investigation relates to his interest as a stockholder. Such being the case, the writ should not be granted as an aid to the prosecution or defense of other litigation as was properly permitted under the statute involved in *White* v. *Manter, supra.* On these general propositions there seems to be no real dispute in the cases.

In the case of *In re Vengoechea,* 86 N. J. L. 35, the court at page 37 gave the following admonition as a guide to courts in the granting of a writ of mandamus in such a case as is before us. "It is the duty of the courts in a proper case to protect minority stockholders, but the power to order an inspection of books is so great, its exercise may affect unfavorably so many innocent stockholders, and may cause such inconvenience or perhaps such ruinous results to a corporation whose operations are so extensive in two continents that the court ought to exercise the power with the greatest care and only when a case is presented which indicates not only a *bona fide* desire to safeguard the interests of all stockholders but a probability that the interests of

all will be served by the proposed investigation." The application for the writ was denied because the court was satisfied that the petition was not brought for a proper purpose. The court said, page 36: "I have reached the conclusion that the application is not made in good faith for the purpose of ascertaining the true *status* of the company or of taking measures to protect the interests of the applicant as a stockholder, but rather for the purpose of annoying the company and perhaps assisting the applicant in his pending litigation against it, which is aside from his interest as a stockholder."

In *McMahon* v. *Dispatch Printing Company*, 101 N. J. L. 470, the principles of the above case were affirmed with this additional comment, page 471: "Of course, the well-settled doctrine that the motives which prompt a suitor to enforce a legal right cannot properly preclude its enforcement, is not affected by a declaration which refers to applications of the kind under consideration, the granting of which rests in the discretion of the court."

In *State ex rel* v. *German Mutual Life Insurance Company of St. Louis*, 169 Mo. App. 354, the court pointed out, in an application under the common law by a stockholder to enforce his right to inspect the books and records of his corporation, that there was a discretion to refuse the writ which should be refused, "where it appeared that relator, who was a debtor, was endeavoring, by means of his position as a stockholder, to extract material for a defense and was, therefore, not asserting his right as a stockholder for a good purpose."

It is unnecessary to discuss other cases. The doctrine above set forth represents the almost universal rule and is in accord with the language of our own court which has said that in a proceeding brought at common law the writ should be denied if the court is satisfied that it is not asked for to protect the rights of the petitioner as a stockholder.

One justification, which the respondents set up in their return to the alternative writ, for their refusal to open the

corporate books and records generally for inspection by the petitioner is that the request "was not for a proper and legitimate purpose which related to his interest as a stockholder, but was designed and intended by said Holdsworth, contrary to the best interest of said corporation, and of all the stockholders of said corporation to discourage and obstruct the prosecution of the aforesaid action brought by said corporation against said Holdsworth." Various alleged transactions are set forth in some detail which it is claimed show that the petitioner did abuse his position of trust and did defraud the company. Objection was made to such evidence and the court excluded it on the ground that it had no relevancy to this proceeding. Counsel argued very strenuously that it was relevant on the question whether the court should exercise its discretion and deny the writ.

The learned justice appears to have had a very narrow view of his discretionary power and to have felt that it was his duty to issue the writ as an aid to the petitioner in an attempt to discover evidence which would aid him in his defense to the suit which the corporation had brought against him. He said in support of his ruling: "If a man is charged with defrauding his company, and that proceeding is pending in another case, I think I should exercise my discretion, if discretion were allowed, to furnish him with an opportunity to determine whether the records of the company bore on the matter to such an extent that he could thereby be enabled to make his defense as a litigant." We think that the learned justice here failed to recognize the true basis for the stockholder's right at common law to examine the books and records of his corporation. It is a right which arises from his status as a stockholder, not as a litigant. It is a right which he asserts, in a sense not only for himself, but for the benefit of the corporation and all stockholders whose interests, because they are stockholders, are identical with his. Such inspection may put the company to great inconvenience and expense and be adverse to

the interests of other stockholders, who may be subjected to loss to benefit one stockholder in a matter which concerns him as an individual. Such reasoning is implicit in the authorities heretofore cited.

The motives of the petitioner were in this instance material. The purpose which leads one to act in a particular way is often known only to the actor himself. It may be discovered by others only from circumstances. As we say so often in construing wills, from the "surrounding circumstances." So in this case, whether the inspection of the corporate records and books was for a purpose which the law recognizes as proper could best be discovered by a consideration of the background and relationship of the parties, whether there was warfare going on between them, whether one had wronged the other, whether one had an interest in harassing the other. Of course the court has some discretion in limiting the range which such evidence may take, but it should not be held to be immaterial. And it is not inadmissible merely because it may also bear on the issues in other litigation. In this case the court excluded evidence on the relationship of the parties which it seems to us was not irrelevant as the court ruled.

The learned justice should not have denied himself the benefit which the evidence as to prior transactions between the parties would have given him in determining the very important question as to the purpose of the petitioner in seeking the examination of the corporate books and records.

*Exceptions sustained.*