# Richmond

## Bank of Giles County, Et Al. v. D. W. Mason, Et Al.

June 14, 1957.

Record No. 4669.

Present, All the Justices.

The opinion states the case.

Case submitted on briefs.

*A. L. Farrier* and *Arthur F. Kingdon*, for the appellants.

*J. L. Dillow, C. B. Andrews* and *Dillow & Andrews*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

D. W. Mason and Mingo Lime and Lumber Company, Inc., the appellees, filed their petition for a mandamus to compel the Bank of Giles County and C. A. Lucas, its president, to divulge certain information as therein demanded. The court below held that the petitioners were entitled to the relief prayed for and required the defendants to furnish certain copies of their records and other information as below noted, of which the defendants, the appellants, now complain.

The petition for mandamus, which was filed on August 29, 1956, alleged that Mason owned 58 shares and Mingo owned 326 shares of the 2500 shares of the common stock issued by the bank; that at the annual meeting of the stockholders on August 16, 1956, attended by the petitioners, the president of the bank, Lucas, made an annual report which included an operating statement showing expenses of about $105,000, which included an item designated "Other Expenses" amounting to about $24,000; that the petitioners, for their information regarding the conduct of the bank, requested of Lucas an itemized statement of what was included in said item of "Other Expenses" which was arbitrarily refused by Lucas; that petitioners then made a motion to the chairman of the meeting that they be furnished such itemized statement, which motion was put to a vote and defeated.

The petition further alleged that Lucas and the members of his family owned more than 50% of the stock of the bank and by virtue of this control arbitrarily defeated petitioners' motion, which was aimed at informing petitioners and other stockholders concerning the item of "Other Expenses"; that Lucas and other officers of the bank still refused to divulge any information about the "Other Expenses" and that the only interest the petitioners had was to ascertain what items were contained therein and they had no intention of making improper inquiries, but that as stockholders they were entitled to full and detailed information in respect to the financial affairs of the bank.

The petition prayed that the defendants be "compelled to divulge a full, complete and detailed report of every item contained in said item 'Other Expenses' "; that a writ of mandamus be awarded compelling defendants to file "the complete, detailed statement of condition rendered at said meeting," and divulge each and every item of which said report was made up; and that the annual meeting be reconvened or a special meeting be called for these purposes; which was followed by a prayer for general relief.

The defendants' demurrer to the petition was overruled and they filed an answer asserting that the petitioners were not acting in good faith but to harass and annoy Lucas, for whom Mason held ill will. They filed as an exhibit a copy of a mandamus proceeding in the Supreme Court of Appeals of West Virginia and recited other incidents which they claimed established that fact. They stated that if the mandamus proceeding was dismissed voluntarily or by the court, and petitioners would file a written request as required by § 13.1-47 of the Code, they would be permitted to make inspections authorized by that section and defendants would furnish details of the item "Other Expenses".

Thereafter, on September 11, 1956, the court heard the testimony of D. W. Mason for the petitioners and the testimony of Frank M. Winston, executive vice-president of the bank, for the defendants, which was the only evidence offered.

Mason testified that at the annual meeting he asked for a copy of the president's report and was told he could have it, but it was not furnished and he had not asked for it again. A copy of this report was then shown to him, he examined and identified it and it was filed as an exhibit. He said the reserve of $7,793.30 for federal income taxes shown in this report was not sufficient and asked for an explanation thereof and for a breakdown of the item of "Salaries

and wages," $52,846.92, and of the item of "Other Expenses" shown in the report. Thereupon defendants exhibited to him and filed a detailed statement entitled "Other Current Operating Expenses," totaling $23,963.59. He said that the day before the hearing he asked the cashier of the bank for a copy of the minutes of the stockholders meeting, which was refused on the ground that it would have to be approved by the next stockholders meeting. Thereupon defendants exhibited to him and filed a copy of these minutes. He then asked for an explanation of an item of $31,250.41, appearing in the president's report as "reserved for losses on loans and other adjustments". He then asked that he be permitted to inspect the bank's federal income tax return for 1955 and to take an auditor with him to inspect the bank's records.

Mason further testified that there was then pending a suit in the Circuit Court of Giles County instituted by him and Mingo against the bank's directors "to have R. F. C. stock retired"; and that he had employed counsel and resisted the action of the directors in having the bank's charter amended to eliminate cumulative voting.

Winston, executive vice-president of the bank, testified that he would furnish a breakdown of the item of salaries and wages if the court required it. He explained that the small reserve for federal taxes was because the bank had accumulated a reserve over the years of about $30,000 for that purpose; and that the item of $31,250.41 was a reserve against anticipated losses on loans which the government allowed banks to accumulate and deduct from income, and was based on the experience of previous years.

By its final order the court directed the defendants to furnish petitioners (1) a signed copy of the minutes of the stockholders meeting; (2) a correct copy of the report of Lucas, president, to the stockholders; (3) a breakdown of the expenses listed in the report as "Other Expenses"; (4) a breakdown of the items included in the report under "Salaries"; (5) all information necessary to clarify the item of $31,250.41 listed in the report under "Reserves"; and (6) to make available for inspection by petitioners or their auditor a copy of the bank's federal income tax return for 1955; and provided that (7) "In the course of the inspection of the records of said bank hereinbefore referred to by petitioners or their duly authorized auditor," the inspection should be made at the bank on any regular week day except Saturday, between specified hours, and the bank should then

make available to petitioners or their auditor "private quarters in which to make said inspections."

The petition for mandamus alleged no demand for or refusal of information except as to what was included in the item "Other Expenses" and its prayer was that the defendants be compelled to furnish that information. It prayed additionally, without any allegation as a basis, that defendants be compelled to file "the complete, detailed statement of condition rendered at said meeting" and "divulge each and every item of which said report was made up."

A defendant is supposed to know the plaintiff's grievances only from his statement of them in his pleading. Pleadings are as essential as proof, and no relief should be granted that does not substantially accord with the case as made in the pleading. *Stanley* v. *Mullins*, 187 Va. 193, 196, 45 S. E. 2d 881, 883; *Potts* v. *Mathieson Alkali Works*, 165 Va. 196, 207, 181 S. E. 521, 525. The relief granted should in any event have been limited to the grievance complained of in the petition.

So far as items (1) (2) and (3) above are concerned, they were exhibited to Mason in the course of his testimony, were filed in the record and thus made available to the petitioners. The defendants expressed their willingness to furnish a breakdown of the items in (4), composing salaries as listed in the report, which had not been referred to in the petition or, so far as the record shows, ever requested by the petitioners prior to the taking of the evidence. Winston testified that item (5) was a reserve against losses on loans allowed to be accumulated by banks and it is not suggested what other information is necessary to clarify it, and no request for information had been previously made in the stockholders meeting or otherwise. Likewise with respect to (6) above, no request to inspect the income tax return had been made prior to Mason's request in his testimony. It was not mentioned in the petition and no reason or purpose was stated in connection with the request. Similarly as to item (7) above, no reference to inspecting the records was made in the petition, and no request for inspection was made prior to Mason's testifying. Neither the request nor the order of the court indicated what records were to be inspected or why it was desired to inspect them, nor was there any showing of right or reason for requiring the bank to furnish petitioners' auditor private quarters for use in inspecting whatever records he might want to see over such period of time as he might want to take.

■ Section 13.1-47 of the Code, a section of the Virginia Stock Corporation Act, Acts 1956, ch. 428, requires, among other things, that each corporation shall keep correct and complete books and records of account and minutes of proceedings of its stockholders and directors, and any stockholder who has owned his stock for six months prior to his demand, or who owns at least 5% of all the outstanding shares, upon written demand, stating the purpose thereof, shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper purpose, its books, records and minutes and make extracts therefrom; and in addition, any court of competent jurisdiction upon proof of a proper purpose by any stockholder may compel the production for examination by such stockholder of such books, records and minutes, and upon written request of any stockholder the corporation shall mail to him its most recent published financial statements showing in reasonable detail its assets and liabilities and the results of its operations.

This Act became effective January 1, 1957, and was, therefore, not in force at the time of this proceeding, which was governed by the common law. However, the provisions of § 13.1-47 do not materially differ from the rules of the common law with respect to the rights of a stockholder to inspect the books and records of a corporation. Such statutes are generally held to be merely in affirmance of the common law. "The right of inspection rests upon the proposition that those in charge of the corporation are merely the agents of the stockholders, who are the real owners of the property." *Guthrie* v. *Harkness*, 199 U. S. 148, 50 L. ed. 130, 26 S. Ct. 4, 6 (involving a national bank). 5 Fletcher Cyc. Corp., Perm. ed., 1952 Revision, § 2213.

At common law a stockholder is entitled to inspect corporate books and records at a proper time and place and for a proper purpose. 18 C. J. S., Corporations, § 502, p. 1176. This right is not absolute and uncontrolled but must be exercised in good faith and for some reasonable purpose germane to his interest as a stockholder. 13 Am. Jur., Corporations, § 371, p. 438; 5 Fletcher Cyc. Corp., *supra*, § 2214.

"However, in enforcing the common law right, which gives to the stockholder the power to inspect books, records and papers generally, the court should not only be satisfied that the stockholder's request is made in good faith, but also for the purpose of protecting his rights as an owner of stock, and that to grant the relief will not

adversely affect the interests of the corporation. * * He should not be granted a roving commission to pore at will through the books and records of the corporation without regard to the purpose for which he seeks the extraordinary remedy which the law gives to him. * *." *Holdsworth* v. *Goodall-Sanford, Inc.*, 143 Me. 56, 55 A. 2d 130, 174 A. L. R. 257, 260, and Anno. at 262. *Sawers* v. *American Phenolic Corp.*, 404 Ill. 440, 89 N. E. 2d 374, 15 A. L. R. 2d 1, and Anno. at 11; 5 Fletcher Cyc. Corp., *supra*, § 2219.

■ The writ of mandamus is a proper remedy, both under the statute and at common law, available to a stockholder who has been improperly denied his right of inspection, 13 Am. Jur., *supra*, § 444, p. 491; but the petition must state "plainly and concisely the grounds of the application," Code, § 8-704. It is fundamental "that in order to secure the enforcement of such right, by mandamus or any other remedy, the complainant must satisfy the court that a right of inspection exists in the particular instance." 13 Am. Jur., *supra*, § 446, p. 492.

Generally speaking a stockholder cannot enlist the aid of courts to enforce his right unless he has first made a demand for an opportunity of inspection and has met with a denial of or obstruction to his right. *Idem*, § 447, p. 493; 18 C. J. S., *supra*, § 510 at 1188.

■ In the present case the only grievance stated by the petitioners in their application for a writ of mandamus was the refusal of their request made at the stockholders meeting for an itemized statement of what was included in the item of "Other Expenses" appearing in the president's report. During the hearing of the evidence this itemized statement was filed and made available to them, as were also a copy of the minutes of the stockholders meeting and a copy of the president's report. They are entitled to know the details of the item of salaries and wages in that report, which the defendants say they may have; and also to inspect a copy of the 1955 federal income tax return, on a written demand stating the purpose thereof. They were not entitled to a mandamus to enforce either of these rights because they neither alleged nor proved a demand and refusal with respect to these items; nor did they have any right to a peremptory writ for a general inspection of the bank's records by an auditor in private quarters in the bank. Not only did they not allege any previous request for such an inspection, they offered no proof of such request nor was there any suggestion in their evidence as to what they wanted to inspect nor any reason given for such an inspection.

Such further rights of inspection and to information as the petitioners are entitled to have are accorded to them by § 13.1-47, now in effect, and if denied those rights they may have them, and such additional rights as they may be entitled to, enforced by the court in an appropriate proceeding with proper allegations and on adequate proof.

The order appealed from is reversed and the petition for mandamus is dismissed.

*Reversed and dismissed.*