Present:  Carrico, C.J., Compton, Stephenson, Lacy, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

RETAIL PROPERTY INVESTORS, INC.
                              OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.
v.  Record No. 951718
                                        June 7, 1996
GEORGE A. SKEENS

                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      Buford M. Parsons, Jr., Judge


        In this appeal, we decide whether the trial court erred in

ordering a corporation to permit one of its shareholders to

inspect and copy its shareholder list.

        George A. Skeens filed a petition for a writ of mandamus,

pursuant to Code § 13.1-771, to compel Retail Property Investors,

Inc. (RPI) to produce its shareholder list for his inspection.

With leave of court, RPI's counsel deposed Skeens, and Skeens'

counsel deposed Barbara Woolhandler, a senior vice president of

RPI, and, without objection, these depositions were made a part

of the record.  On June 16, 1995, the trial court conducted an

evidentiary hearing, and, at its conclusion, the court ordered

RPI to produce its shareholder list.  RPI appeals.

        RPI is a Virginia corporation operating as a real estate

investment trust (REIT).  During 1989 and 1990, RPI shares of

stock were sold by PaineWebber Incorporated (PaineWebber).  RPI

is managed by PaineWebber Properties Incorporated, a wholly owned

subsidiary of PaineWebber.

        In October 1990, Skeens purchased from PaineWebber 25,000

shares of RPI at a price of $250,000.  Skeens testified that he

made the investment after a PaineWebber broker "guaranteed" that

he would double or triple his money, and, for approximately three

years thereafter, RPI paid dividends.  By early 1994, however, RPI's value, like the value of many other REITs, began to decline, and the payment of dividends ceased.

By letter dated January 6, 1995, Skeens requested that RPI provide him with the names and addresses of all its shareholders and the number of shares held by each or to allow him or his attorney to inspect and copy such information.  Skeens stated in the letter that he was requesting the information so that he or his attorney could communicate with the other shareholders about the following:

1)    The misleading manner in which RPI's shares were sold to [him] and others . . . ;

2)    The mismanagement of RPI by its officers and directors . . . ;

3)    The generation and distribution of misleading information via . . . reports concerning the management and status of RPI . . . ;

4)    The misleading manner in which the shareholders' votes were solicited for the annual meeting held September 7, 1993; and

5)    The cessation of dividend payments by RPI . . . and the misleading explanation given by RPI for [the] dividend cessation.

Woolhandler, on behalf of RPI, responded to Skeens' request by letter dated January 10, 1995.  She advised Skeens that she would send him the requested information after he signed an enclosed "certification" and paid a $300 administrative fee. Woolhandler explained that the certification was necessary "to assure that [Skeens'] request [was] for a proper purpose."  The

enclosed certification required Skeens and his counsel to certify that they

> [would] not use the [shareholder] List, directly or indirectly, for any purposes other than those specified purposes and, in particular, [would] not use the List as a means of soliciting, directly or indirectly, business and/or professional relationships or retainers of any nature from any RPI shareholder.

By letter dated March 1, 1995, Skeens' counsel informed Woolhandler that neither he nor Skeens would sign the certification because Skeens wanted to communicate with other shareholders about litigation arising out of the matters set forth in his January 6, 1995 letter. Woolhandler then advised Skeens' counsel that RPI would not supply the shareholder list.

When deposed, Skeens was asked to explain, with respect to each of the reasons stated in his January 6, 1995 letter, what he intended to discuss with RPI's other shareholders. Skeens' counsel, however, instructed Skeens not to answer the questions. Consequently, Skeens testified only that "[he] would like to ask if any of [the other shareholders] were told that they would get two or three times their money back and then [had] the rug pulled out from under [them]." When Skeens was asked how he had been misled, his counsel again objected and instructed him not to answer the question.

Also during his deposition, Skeens was instructed by his counsel not to divulge any information regarding any additional matters he desired to communicate to the other shareholders. Skeens did state, however, that he sought the shareholder list

because he intended to file a lawsuit and wished to solicit other shareholders to join in the suit.

Only two witnesses testified in the evidentiary hearing, Skeens and Joseph W. Robertson, Jr., a member of RPI's board of directors. Skeens' testimony was scant and essentially mirrored his deposition. He again stated that his purpose in seeking the shareholder list was to ascertain what the other shareholders had been told when they purchased RPI stock and whether they would join in the suit. He sought the participation of the other shareholders in order to share the expenses of litigation. On cross-examination, he admitted that he had never investigated whether his receipt of the shareholder list would be injurious to RPI.

Robertson, who was called by Skeens as an adverse witness, testified that production of the shareholder list would be injurious to RPI. He explained that
> the cost to defend the lawsuit, the time of management, the time of the board of directors to prepare for that case . . . and defend it would be damaging to the corporation, based on what [the board has] planned and [is] currently studying as shareholder enhancement plans today.

Robertson also testified that the board of directors had determined that producing the shareholder list would not be in RPI's best interests. The board of directors, Robertson testified,
> made a judgment that based on what this company is, which we have not divulged to the public yet, some reorganization issues that are going on, the shareholder enhancement plans that will be implemented,

that we believe that to give Mr. Skeens and his
attorney the shareholder list, which we believe was
primarily for the use of soliciting a class action
lawsuit, at this point in time for this company, based
on the facts that we had, was not in the best interests
of Mr. Skeens as a shareholder and the other
shareholders.

First, we determine what must be proved before a trial court
may compel the production of a corporation's records to one of
its shareholders and upon whom rests the burden of proof.

Prior to 1956, a shareholder's right to compel production of
corporate records was governed by common law principles.  In
1956, however, the General Assembly enacted the Virginia Stock
Corporation Act, Code §§ 13.1-601 to -779 (1993 Repl. Vol.) (the
Act).  Code § 13.1-771(C) provides that a shareholder is entitled
to obtain the record of shareholders "only if":

1. He has been a shareholder of record for at
least six months immediately preceding his demand or is
the holder of record of at least five percent of all of
the outstanding shares;
2. His demand is made in good faith and for a
proper purpose;
3. He describes with reasonable particularity his
purpose and the records he desires to inspect; and
4. The records are directly connected with his
purpose.

Shortly after the effective date of the Act, we decided <u>Bank
of Giles County</u> v. <u>Mason</u>, 199 Va. 176, 98 S.E.2d 905 (1957), a
case in which two of the bank's shareholders sought certain
corporate records.  The Act, however, was not in effect at the
time the shareholders' suit was filed; thus, <u>Mason</u> was decided
upon common law principles.

We said, in <u>Mason</u>, nonetheless, that "the provisions of

§ 13.1-47 [now § 13.1-771] do not materially differ from the rules of the common law with respect to the rights of a stockholder to inspect the books and records of a corporation. Such statutes are generally held to be merely in affirmance of the common law." Id. at 181, 98 S.E.2d at 908. We also said that a stockholder's right to inspect corporate books and records is "not absolute and uncontrolled," but must be for a "proper purpose." Id. We explained that, before a trial court compels production of such records, the court must be satisfied that the stockholder's request is made in good faith and for the purpose of protecting his rights as an owner of stock and that granting the relief will not adversely affect the corporation's interests. Id. at 181-82, 98 S.E.2d at 908. Finally, we stated that the stockholder must prove to the court that a right of inspection exists. Id. at 182, 98 S.E.2d at 909.

Code § 13.1-771(C)(2) requires a shareholder to prove that his demand of specified corporate records is made "in good faith and for a proper purpose." Reading Code § 13.1-771(C)(2) and Mason together, we conclude that a shareholder seeking corporate records pursuant to Code § 13.1-771(C)(2) has the burden of satisfying a trial court that he seeks such records for a proper purpose, meaning that he is acting in good faith to protect his rights as a shareholder and that the relief he seeks will not adversely affect the corporation's interests.

Applying these principles of law in the present case, we

hold that Skeens failed, as a matter of law, to carry his burden of proving that he sought the records for a proper purpose.  All that Skeens showed by the evidence was that he sought the shareholder list so he could institute a lawsuit and, possibly, gain the support of other shareholders who would share in the litigation expenses.  Skeens presented no evidence that RPI's interests would not be affected adversely if he obtained the shareholder list.  To the contrary, Skeens, through his adverse witness, Robertson, presented clear, reasonable, and uncontradicted evidence that the production of such records would be injurious to RPI, and he is bound by such testimony.  Norfolk, Etc. R.R. Co. v. Mueller Co., 197 Va. 533, 539, 90 S.E.2d 135, 139 (1955); Crabtree v. Dingus, 194 Va. 615, 622, 74 S.E.2d 54, 58 (1953).  Consequently, we conclude that the trial court erred in ordering RPI to produce its shareholder list to Skeens.

Accordingly, we will reverse the trial court's judgment and enter final judgment in favor of RPI.

Reversed and final judgment.