Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Stephenson, Senior Justice

MISTY ANN HAYS PHILLIPS, EXECUTOR
  OF THE ESTATE OF RICHARD WILLIAM PHILLIPS,
  DECEASED
                                          OPINION BY
v.  Record No. 980444    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                       January 8, 1999
SOUTHEAST 4-H EDUCATIONAL CENTER, INC., ET AL.


            FROM THE CIRCUIT COURT OF SUSSEX COUNTY
                   Robert G. O'Hara, Judge

     The principal issue in this appeal is whether the trial

court erred in striking the plaintiff's evidence at the

conclusion of the plaintiff's case-in-chief.  We also determine

whether the trial court erred in excluding certain evidence

proffered by the plaintiff's expert witness.

                                I

     Misty Ann Hays Phillips, Executor of the Estate of Richard

William Phillips, deceased (the Plaintiff), filed an action

against Southeast 4-H Educational Center, Inc. (the Center),

Susan Morlino, and Nicole Gipson (collectively, the Defendants)

for the wrongful death of Richard William Phillips.  The

Plaintiff alleged that Richard's death by drowning was caused by

the Defendants' negligence.

     The case was tried to a jury, but, at the conclusion of the

Plaintiff's case-in-chief, the trial court struck the

Plaintiff's evidence and entered judgment for the Defendants. We awarded the Plaintiff this appeal.

## II

In reviewing the trial court's decision to strike the Plaintiff's evidence, we will view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiff. See Mullins v. Virginia Lutheran Homes, 253 Va. 116, 119, 479 S.E.2d 530, 532-33 (1997).

The Center operated a 25-yard swimming pool in Sussex County. Morlino was the pool's senior lifeguard and manager, and Gipson was a lifeguard. Both lifeguards had the required certificates in lifesaving and cardiopulmonary resuscitation (CPR).

Richard was 32 years old. He was about six feet four inches tall and a strong swimmer.

Morlino, who was called by the Plaintiff as an adverse witness, testified that, on the day before Richard drowned, she had observed him swim underwater the length of the pool and back several times. When Richard completed each lap, he came to the surface of the water, took a breath of air, turned, and swam another lap. After several laps, Richard stopped swimming. Before coming to the water's surface, however, he had held his

breath and had lain on the bottom of the pool in the shallow end for a brief period.

The following day, May 30, 1993, Morlino and Gipson were on duty as lifeguards. Morlino again observed Richard, who was accompanied by Richard Wayne Parkllan, swimming in the pool. After about 30 minutes, Parkllan got out of the pool and sat on the deck. Richard, who was then the only person in the pool, continued to swim.

As he had done the previous day, Richard began to swim laps underwater. He continued to swim laps for 15 to 20 minutes while Morlino watched. After completing one of the laps, Richard stood in the shallow end of the pool, which is three feet deep, and then went back under the water. As Richard sat under the water, Morlino noticed bubbles coming to the surface.

When the bubbles disappeared and Richard did not come to the water's surface, Morlino became concerned. Within "moments," Morlino jumped into the pool to ascertain Richard's condition. With Parkllan's assistance, Morlino pulled Richard out of the pool and onto the deck. Gipson telephoned for emergency response personnel.

Richard was not breathing and had no pulse, so Morlino and Parkllan alternated in administering CPR. Approximately 10 minutes later, they were relieved by a rescue squad member. While CPR was being administered, Richard vomited, but he

3

remained unconscious. The rescue squad took him to a hospital where he was pronounced dead. An autopsy revealed that the cause of death was drowning.

The Plaintiff called Gerald M. Dworkin as an expert witness. Dworkin was qualified as an expert in water safety and as an emergency medical technician (EMT) with training in defibrillation. Dworkin testified that, in his opinion, the two lifeguards breached the acceptable standard of care in failing to sit in the elevated lifeguard chairs, to recognize signs of passive drowning, and to effect a timely rescue. Dworkin further testified that it was his opinion that the Center's management breached the acceptable standard of care in failing to have site-specific training and to have a standard operating procedure.

III

We first consider whether the trial court erred in excluding a portion of Dworkin's testimony. Dworkin would have opined that, after a victim stops breathing, his heart continues to beat for several minutes. Dworkin would have opined further that, if Richard had been removed from the water within 30 seconds of the onset of drowning, he would have had a heartbeat, CPR would have been unnecessary, and artificial respiration would have been successful. The trial court excluded this

4

testimony, concluding that this involved a medical opinion and that Dworkin was not qualified to render such an opinion.

Whether a proffered expert opinion should be excluded is a matter that rests within the sound discretion of a trial court. The court's decision to exclude such testimony will not be reversed on appeal unless the record clearly establishes that the expert was qualified to express the opinion. Grubb v. Hocker, 229 Va. 172, 176, 326 S.E.2d 698, 700 (1985).

Although the record shows that Dworkin was an EMT and experienced in CPR and water safety, we cannot say that the record clearly establishes that he was qualified to opine that Richard would have survived had he been removed from the water within 30 seconds of the onset of drowning. The opinion requires technical knowledge in the field of medicine, and, therefore, we cannot say that the trial court abused its discretion in excluding this testimony.

IV

We now consider the principal issue in this appeal; that is, whether the trial court erred in striking the Plaintiff's evidence. Ordinarily, negligence and proximate cause are jury issues. They become questions of law, however, when reasonable minds could not differ about the conclusions to be reached. Poliquin v. Daniels, 254 Va. 51, 57, 486 S.E.2d 530, 534 (1997).

Generally, the owner of a swimming pool to which the general public is invited for a fee

> must exercise ordinary care for the safety of his patrons. He must make reasonable provisions to guard against those accidents which common knowledge and experience teach are likely to befall those engaged in swimming and other aquatic sports for which he has provided facilities, but the owner is not an insurer of the safety of his patrons.

Blacka v. James, 205 Va. 646, 649, 139 S.E.2d 47, 50 (1964).

Depending upon the circumstances involved, an owner of a swimming facility may have a duty "to station qualified lifeguards at the [facility] to supervise patrons and rescue those in peril," and, "[i]n such case, the [facility] owner is liable for the negligence of lifeguards in the performance of their duties." S & C Company v. Horne, 218 Va. 124, 128-29, 235 S.E.2d 456, 459 (1977). A lifeguard's duty is twofold. "First, he has some duty to observe swimmers for signs of distress; second, he has some duty at some point to attempt rescue of those in distress." Id. at 129, 235 S.E.2d at 459. In the performance of the second duty, a lifeguard must exercise the care that an ordinarily cautious lifeguard would exercise under similar circumstances. Id.

In the present case, Morlino, called by the Plaintiff as an adverse witness, testified that she and Gipson were able to see Richard from their positions on the pool's deck, that they were watching Richard the entire time he was in the pool, and that

6

they responded promptly when they realized that Richard was in distress.  Morlino's testimony is uncontradicted; therefore, the Plaintiff is bound by it.  See Retail Property Investors, Inc. v. Skeens, 252 Va. 36, 41, 471 S.E.2d 181, 183 (1996).  The only evidence in the present case to suggest that the Defendants were negligent comes from the opinions of Dworkin.

The Plaintiff's theory of recovery is that Morlino and Gipson were negligent in not recognizing Richard's unconsciousness sooner and that, if they had, Richard could have been saved.  Dworkin testified that, when Richard was lying motionless on the bottom of the pool and bubbles were coming to the surface of the water, this "was a pretty good indication that there was a problem."  Dworkin further testified that lifeguards should be active in their surveillance by practicing the "10/20 second rule."  According to Dworkin, this rule requires a lifeguard to assess every situation for 10 seconds before determining whether action is necessary and reassessing that situation within 20 seconds.  He opined that, because the lifeguards "observed the bubbles, observed the lack of movement, and actually timed this for a minute's time before they . . . effected the rescue," they breached the 10/20-second rule and, therefore, were negligent.

Viewing, as we must, Dworkin's testimony in the light most favorable to the Plaintiff, we conclude that the Defendants' alleged negligence is a jury issue.

> But mere proof of an accident and negligence does not establish a cause of action. There must be in addition a causal connection between the negligence and the . . . death complained of. Evidence tending to show a causal connection must be sufficient to remove the case out of the realm of speculation and conjecture and into the realm of legitimate inference before submitting it to a jury for its determination.

Blacka, 205 Va. at 650, 139 S.E.2d at 50. Thus, in the present case, the Defendants' alleged negligence must have a causal connection with Richard's drowning, and, in the absence of a showing that the Defendants' negligence was the proximate cause of the death, there can be no recovery.

We have carefully examined the record to find evidence tending to show that the Defendants' alleged negligence proximately caused Richard's death, and we find none. At oral argument, Plaintiff's counsel was asked to pinpoint in the record evidence of causation. Counsel directed this Court to a portion of Dworkin's testimony wherein he testified that, if Richard had had a pulse when he was removed from the water and artificial respiration had been timely undertaken, then "there [was] a good chance that [he was] going to recover." (Emphasis added.) We can only speculate, however, when Richard's pulse stopped, and we do not think that an undefined "good chance" of

8

recovery removes the issue of causation from the realm of speculation and conjecture.  Therefore, we hold that the trial court did not err in striking the Plaintiff's evidence.

V

Accordingly, the trial court's judgment will be affirmed.

Affirmed.