COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Fulton, Causey and Raphael
Argued at Lexington, Virginia


WILLIAM L. RESPESS, ET AL.

OPINION BY
v.        Record No. 1290-23-3         JUDGE STUART A. RAPHAEL
JUNE 25, 2024

VMI ALUMNI ASSOCIATION


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Paul McCourt Curley (Six East Law Group – Curley Law Firm,
PLLC, on briefs), for appellants.

Michael E. Derdeyn (Matt Von Schuch; Flora Pettit, PC, on brief),
for appellee.


Four alumni of the Virginia Military Institute sued the VMI Alumni Association under the Virginia Nonstock Corporation Act to force the Association to give them the email addresses of their fellow members.  The Act requires nonstock corporations like the Association to maintain a "record of members that includes the names and addresses of all members."  Code § 13.1-932(C).  The Association collects its members' email addresses.  And Code § 13.1-933(B)(3) entitles persons who have been members for more than six months and who have a proper purpose to inspect and copy "[t]he record of members."  The Association denied petitioners' request, arguing (among other things) that Code § 13.1-933(B)(3) does not require nonstock corporations to disclose their members' email addresses.  The trial court agreed and dismissed the petition.

We affirm.  Subsection (E)(2) of Code § 13.1-933 makes clear that the Act does not limit the power of a court to enforce a member's common-law right to inspect and copy the

corporation's records, which could include the email addresses of its members. But petitioners here limited their claim to enforcing only their statutory rights. And we agree with the trial court that a member's statutory right to inspect the record of members does not extend to the members' email addresses.

BACKGROUND

The VMI Alumni Association is a Virginia nonstock corporation that consists of roughly 20,000 alumni of the Virginia Military Institute. Its records hold "very detailed" information about every alumnus, including their graduation year, rank, employment history, and other confidential information. The Association's primary method of communicating with its members is by email.

The four petitioners are alumni of VMI and long-standing and active members of the Association. Two are graduates of the Class of 1961: William L. Respess and Salvatore J. Vitale, Jr. Two are graduates of the Class of 1974: Ronald M. Stelmasczyk and Mark W. Prentice.

In March 2023, citing Code §§ 13.1-845(B) and 13.1-933(B), petitioners requested the Association in writing to provide an electronic copy of "the record of members" that included "their email addresses."[1] Respess and Vitale wrote that they needed the email addresses "to solicit alumni participation in person at the upcoming Annual Meeting of the Members . . . to elect new members of the Board." They said that Vitale wanted "to be elected to the Board and require[d] the list to promote his candidacy." They noted that the Board's decision in 2019 to eliminate voting by proxy warranted alerting Association members that they needed to appear in person for the upcoming meeting in Lexington. Stelmasczyk and Prentice signed a similar

---

[1] "The right to copy records under § 13.1-933 includes, if reasonable, the right to receive copies by xerographic or other means, including copies through an electronic transmission if available and so requested by the member." Code § 13.1-934(B).

- 2 -

request stating that they intended to use the list to communicate with fellow members "on issues we feel are important to the Membership and [to] build consensus on these issues regarding the Alumni Association's operations and VMI."

The Association answered that it would make available a paper copy of the names and mailing addresses of its members. The printout would be 400 pages long. But on "advice of counsel," the Association refused to provide email addresses, which it said were not required to be disclosed to members under Code § 13.1-933(B). The Association also wrote that petitioners had not shown a proper purpose. It expressed concern that disclosing members' email addresses could lead to "general communications" from petitioners that "could cause confusion and unrest among the alumni and potential harm to VMI."

On April 25, 2023, the four alumni filed a verified petition for mandamus seeking to compel the Association to produce an electronic copy of the record of members that included members' email addresses. They asserted inspection rights under Code §§ 13.1-845(B) and 13.1-933(B) and (C). Petitioners requested that the court "enter an order permitting inspection and copying of the record of members, to include the members' names, physical addresses, and email addresses and that such information be transmitted in electronic form." Petitioners also sought attorney fees under Code § 13.1-935(C), production of the email addresses as part of the members' list for the upcoming meeting on May 6, and an order under Code § 13.1-845(D) postponing that meeting until the list was provided. Petitioners did not assert any right of inspection under Virginia common law.

The Association filed a verified opposition to the petition, arguing that the record of members that it was required to produce did not have to include members' email addresses. The Association also claimed that petitioners had failed to establish a "proper purpose" for having member email addresses.

- 3 -

Applications under Code § 13.1-933(B) and (C) must be heard "on an expedited basis," Code § 13.1-935(B), and the trial court promptly conducted an evidentiary hearing on May 4, 2023, two days before the scheduled alumni meeting in Lexington. The trial court heard testimony from the Association's CEO and from Respess. The court made no findings about whether petitioners had a proper purpose to request the email addresses. Instead, the court concluded that neither "Code § 13.1-845 nor . . . § 13.1-933 require that a Virginia nonstock corporation provide or disclose the electronic mail addresses of its members." The court entered a final order dismissing the petition, and petitioners noted a timely appeal.

ANALYSIS

Virginia law distinguishes between stock corporations governed by the Virginia Stock Corporation Act (Code §§ 13.1-601 to -792) and nonstock corporations governed by the Virginia Nonstock Corporation Act (Code §§ 13.1-801 to -946). A "shareholder" of a stock corporation typically has an equity interest in the company, Code § 13.1-603, while a "member" of a nonstock corporation has no ownership interest but may have certain rights associated with membership, including voting rights, Code § 13.1-803. *See generally* 1 Marilyn E. Phelan, *Nonprofit Organizations: Law & Taxation* §§ 1:1, 1:2 (2010).

Whether a member or shareholder has the right to inspect and copy the email addresses of the corporation's other members or shareholders presents a question of law that we review de novo. *Berry v. Bd. of Supervisors*, 302 Va. 114, 127 (2023). This question is a subset of the larger question about the rights of a member or shareholder to inspect a corporation's books and records. There are two sources for such rights: the common law and the Code of Virginia. We summarize the legal history of those rights before turning to whether a nonstock corporation must disclose its members' email addresses to a member who requests them.

- 4 -

*I. The common law and the Code of Virginia govern a Virginia corporation's obligation to disclose member or shareholder email addresses.*

*A. Inspection rights under the common law*

Under Code § 1-200, the common law of England continues "in full force" in Virginia and provides the "rule of decision, except as altered by the General Assembly." Although we have noted the "continuing uncertainty about whether 1776 or 1792 'fixes the date of the Commonwealth's adoption of English common law,'" *Butler v. Stegmaier*, 77 Va. App. 115, 135 (2023) (quoting *White v. United States*, 300 Va. 269, 277 n.5 (2021)), that date does not matter here.

Long before 1776, English common law recognized the qualified right of a shareholder to inspect the corporation's books and records. *See, e.g.*, *Rex v. Fraternity of Hostmen*, 2 Str. 1223, 1223, 93 Eng. Rep. 1144, 1144 (K.B. 1745) ("[E]very member of the corporation had, as such, a right to look into the books for any matter that concerned himself, though it was in a dispute with others . . . ."); *Gery v. Hopkins*, 7 Mod. 129, 129, 87 Eng. Rep. 1142, 1142 (Q.B. 1702) (ordering company to produce its books, "it being a cause between parties having stock there"); *see also In re Steinway*, 53 N.E. 1103, 1105 (N.Y. 1899) (collecting cases); 5A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 2214, at 269 (2020) ("The common-law rule was recognized in the early English decisions.").

"When our ancestors migrated to America, they brought with them the common law of" England. *Livingston v. Jefferson*, 15 F. Cas. 660, 665 (C.C.D. Va. 1811) (No. 8,411) (opinion of Marshall, C.J.). As the United States Supreme Court said more than a century ago, "[t]here can be no question that the decisive weight of American authority recognizes the common law right of the shareholder, for proper purposes and under reasonable regulations as to place and time, to inspect the books of the corporation of which he is a member." *Guthrie v. Harkness*, 199 U.S. 148, 153 (1905); *see Fletcher Cyclopedia of the Law of Corporations*, *supra*, § 2214, at 265

("The general rule at common law is that all shareholders of a corporation have the right, by reason of their interest therein, to inspect and examine the books and records of the corporation at reasonable times and places and for proper purposes.").

The Supreme Court observed in *Guthrie* that "[i]n many of the States this right has been recognized in statutes which [were] generally held to be merely in affirmance of the common law." 199 U.S. at 153. "The books are not the private property of the directors or managers, but are the records of their transactions as trustees for the stockholders." *Id.* at 154 (quoting *Huylar v. Cragin Cattle Co.*, 2 A. 274, 278 (N.J. Ch. 1885)). The Court said that "[t]he right of inspection rests upon the proposition that those in charge of the corporation are merely the agents of the stockholders who are the real owners of the property." *Id.* at 155.[2]

In Virginia, before "1956, a shareholder's right to compel production of corporate records was governed by common law principles." *Retail Prop. Invs., Inc. v. Skeens*, 252 Va. 36, 40 (1996). A Virginia shareholder enjoyed the right "to inspect corporate books and records at a proper time and place and for a proper purpose." *Bank of Giles Cnty. v. Mason*, 199 Va. 176, 181 (1957). That right, however, "is not absolute and uncontrolled but must be exercised in good faith and for some reasonable purpose germane to his interest as a stockholder." *Id.*

By the start of the 20th century, Virginia's statutes governing corporations had still not addressed shareholder inspection rights, did not require corporations to maintain a record of the names and addresses of shareholders, and did not distinguish between stock and nonstock

---

[2] *Guthrie* held that a federal law governing national banks did not bar a common-law action by a shareholder to inspect records for a proper purpose. 199 U.S. at 156. The Court recognized that such a right "may be abused," but it concluded that "[t]he possibility of the abuse of a legal right affords no ground for its denial." *Id.* at 155-56. Rather, the trial judge, in determining whether to grant access, must "exercise a sound discretion and grant the right under proper safeguards to protect the interests of all concerned." *Id.* at 156. "The writ should not be granted for speculative purposes or to gratify idle curiosity or to aid a blackmailer, but it may not be denied to the stockholder who seeks the information for legitimate purposes." *Id.*

corporations.  *See* Code of 1887, tit. 17, ch. 46, §§ 1068 to 1105; Code of 1849, tit. 17, ch. 56, §§ 1-28.  That changed in 1903, when the General Assembly required for the first time that "[e]very stockholder . . . furnish to the secretary of such corporation . . . the address to which notice . . . may be mailed," and further required the secretary to "keep a register of the address of each stockholder so furnished."  1903 Va. Acts ch. 270, ch. IV, § 49 at 481.[3]  That provision was carried forward in later codes.  *See* Code of 1904, § 1105e(49); Code of 1919, § 3829; Code of 1942, § 3829; Code of 1950, § 13-199.  The 1903 law also provided for the chartering of nonstock corporations, permitting three or more members to incorporate (among other benevolent endeavors) "an alumni association . . . in which no capital stock is required."  1903 Va. Acts ch. 270, ch. IV, § 1 at 461.

*B.  The 1956 amendments to the Stock Corporation and Nonstock Corporation Acts*

In 1956, the General Assembly completely rewrote the Virginia corporation code.  *See* 1956 Va. Acts ch. 428 (codified at Code §§ 13.1-1 through 13.1-527).  "The new corporate law was adopted following a study by the Code Commission of Virginia at the direction of the General Assembly."  *Video Eng'g Co. v. Foto-Video Elecs.*, 207 Va. 1027, 1029 (1967); *see* House Doc. No. 5, *Report by the Code Commission of Virginia for Revision of the Laws Relating to Corporations* (1956) ["1956 House Doc."].  "An exhibit filed with the report of the Code Commission stated that the Model Business Corporation Act ["Model Act"] prepared by the American Bar Association Committee on Corporate Laws was the basis of the proposed revision of the corporate laws."  *Video Eng'g*, 207 Va. at 1029; *see* 1956 House Doc., *supra*, at 3-4.  Our 1956 law was thus "patterned on" the Model Act.  *O'Brien v. Socony Mobil Oil Co.*, 207 Va.

---

[3] The 1903 "Act concerning corporations" was enacted the year after ratification of the Constitution of 1902, which barred the General Assembly from granting private corporate charters and created and empowered the State Corporation Commission to grant corporate charters going forward.  *See* Va. Const. art. IV, § 63(17) (1902); *id.* art. XII §§ 154, 156(a).

707, 710 (1967); *see also Fisher v. Tails, Inc.*, 289 Va. 69, 75 (2015) ("tracks closely"); *Hill v. Hill*, 227 Va. 569, 577 & n.2 (1984) ("based upon"); *White v. Perkins*, 213 Va. 129, 134 (1972) ("suggested by").

The Virginia Nonstock Corporation Act, in turn, was "drawn from the [ABA's] Model Non-Profit Corporation Act." George D. Gibson, *The Virginia Corporation Law of 1956*, 42 Va. L. Rev. 445, 450 (1956).[4] But the provisions were "almost precisely parallel to the stock corporation provisions, with variations only where necessary or desirable because of the membership aspect." *Id.*

The 1956 law included a "Books and Records" provision in both the Stock Corporation Act and the Nonstock Corporation Act. *See* 1956 Va. Acts ch. 428 (Code §§ 13.1-47, 13.1-228). Both provisions carried forward the 1903 requirement that the corporation keep a record of the "names and addresses" of the stockholders or members entitled to vote. *Id.* But the statutory information rights differed slightly for stock and nonstock corporations.

The 1956 Stock Corporation Act in Code § 13.1-47 gave shareholders the statutory right to inspect the "books and records of account, minutes and record of stockholders," provided the shareholder either (i) held shares "for at least six months immediately preceding his demand," or (ii) held "at least" 5% of the outstanding shares, and (in either case) provided further that the shareholder had a "proper purpose" and had made a "written demand stating the purpose." Our Supreme Court twice noted that this provision "[did] not materially differ from the rules of the common law with respect to the rights of a stockholder to inspect the books and records of a corporation. Such statutes are generally held to be merely in affirmance of the common law."

---

[4] For the current version, *see* Nonprofit Organization Committee, *Model Nonprofit Corporation Act* (4th ed. 2022).

*Skeens*, 252 Va. at 40-41 (quoting *Bank of Giles*, 199 Va. at 181). What is more, Code § 13.1-47 provided a saving clause to preserve common-law inspection rights:

> Nothing herein contained shall impair the power of any court of competent jurisdiction, upon proof by a stockholder of proper purpose, irrespective of the period of time during which such stockholder shall have been a stockholder of record, and irrespective of the number of shares held by him to compel the production for examination . . . of the books and records of account, minutes, and record of stockholders of a corporation.

*Id.*[5]

The parallel provision in the 1956 Nonstock Corporation Act provided broader inspection rights: "*All books and records* of a corporation may be inspected by any member . . . *for any proper purpose* at any reasonable time." 1956 Va. Acts ch. 428 (Code § 13.1-228) (emphases added).

In the decades that followed, the ABA's Committee on Corporate Laws made "periodic amendments to the Model Act, including a complete revision in 1984 and a second revision in 2016. Virginia was the first state to adopt the 1984 revision and in the spring of 2019 became one of the first states to adopt the 2016 revision." Allen C. Goolsby & Steven M. Haas, *Goolsby*

---

[5] *Cf. White v. United States*, 300 Va. 269, 275 n.3 (2021) ("Under settled principles, '[t]he common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended.'" (quoting *Boyd v. Commonwealth*, 236 Va. 346, 349 (1988))); *Crosby v. ALG Tr., LLC*, 296 Va. 561, 570 (2018) ("[T]his Court has repeatedly admonished that, where a statute does not expressly or by necessary implication change the common law, that statute is 'to be read "in conjunction with the common law, giving effect to both."'" (quoting *Cherry v. Lawson Realty Corp.*, 295 Va. 369, 377 (2018))); *Artis v. Commonwealth*, 76 Va. App. 393, 402 (2023) ("The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." (quoting *Wicks v. City of Charlottesville*, 215 Va. 274, 276 (1974))).

*& Haas on Virginia Corporations* ix (7th ed. 2022).[6] Those bills, discussed below, both bear on the inspection rights at issue here.

C. *The 1985 amendments to the Stock Corporation and Nonstock Corporation Acts*

In its 1985 report to the General Assembly, the Code Commission recommended revising both the Virginia Stock Corporation Act and the Nonstock Corporation Act. *See Report of the Virginia Code Commission on the Revision of Chapters 1 and 2 of Title 13.1 of the Code of Virginia*, H. Doc. No. 13, at 2-3 (1985) ["1985 Code Commission Report"]. The report presented a section-by-section commentary. *Id.* at 6-157. It also appended a section-by-section analysis of the Stock Corporation Act by a "special joint committee of the business law sections of the Virginia State Bar and the Virginia Bar Association." Goolsby & Haas, *supra*, at ix; *see* 1985 Code Commission Report at 200.

The 1985 amendments required both stock and nonstock corporations to maintain a "record" of shareholders or members "in a form that permits preparation of a list of the names and addresses." 1985 Va. Acts ch. 522, at 928 (Code § 13.1-770(C)); *id.* at 971 (Code § 13.1-932(C)). Both types of corporations needed to produce a "list" for meetings that identified (among other things) the persons "entitled to vote at such meeting" and their "address." *Id.* at 888 (Code § 13.1-661(A)); *id.* at 945 (Code § 13.1-845(A)).

The inspection rights of shareholders in stock corporations were placed in Code § 13.1-771, and inspection rights of nonstock-corporation members in § 13.1-933. The two provisions were substantially similar. *Compare* 1985 Va. Acts ch. 522, at 928-29, *with id.* at 972. They were based on "Model Act § 16.02 except for [one subsection] that [was] taken from Virginia Code § 13.1-47." 1985 Code Commission Report at 99. Code § 13.1-771 carried

_____

[6] As of November 2023, 35 States and the territory of Guam had enacted some version of the Model Act. *See* Committee on Corporate Laws, MBCA Enactments by States (Nov. 13, 2023) (collecting statutes), https://perma.cc/BGD3-7Q4L.

forward the 1956 provision conditioning statutory inspection rights on the shareholder's having held stock for six months or owning at least 5% of the shares. *Id.* Since nonstock corporation members do not own shares, Code § 13.1-933 in the Nonstock Corporation Act conditioned statutory inspection rights simply on the member's having "been a member for a least six months immediately preceding his demand." 1985 Va. Acts ch. 522, at 972 (Code § 13.1-933(C)(1)). Subsection (C) of both provisions imposed additional conditions: the demand must have been "made in good faith and for a proper purpose"; the requestor must describe "with reasonable particularity" his "purpose and the records he desires to inspect"; and the records must be "directly connected with his purpose." *Id.* at 928-29 (Code § 13.1-771(C)(1)-(4)), 972 (Code § 13.1-933(C)(1)-(4)).

Both statutes also included a saving clause like the one in the prior Stock Corporation Act. Subsection (E)(2) (the "Saving Clause") of both Code § 13.1-771 and Code § 13.1-933 stated that "This section does not affect . . . (2) The power of a court, independently of this chapter, to compel the production of corporate records for examination." 1985 Va. Acts ch. 522, at 929 (Code § 13.1-771(E)(2)); *id.* at 972 (Code § 13.1-933(E)(2)). As the Joint Bar Committee noted, the Saving Clause was "thought to preserve the common law inspection rights of a shareholder." 1985 Code Commission Report at 288. *Accord* Model Business Corporation Act (1984 Revision), § 16.02 cmt. 4 (stating that § 16.02(e) of the 1984 Model Act "provides that the right of inspection granted by § 16.02 is an independent right of inspection that is not a substitute for or in derogation of rights of inspection that may exist . . . as a 'common law' right of inspection . . . . Section 16.02(e) simply preserves whatever independent right of inspection exists under these sources"), https://perma.cc/6EXM-HFVE.[7]

---

[7] Virginia did not adopt *all* of the provisions of the 1984 Model Act. For instance, the General Assembly "rejected § 8.30," governing a director's duty of care. *Willard v. Moneta*

*D. The 2019 amendments to the Virginia Stock Corporation Act*

The ABA's Corporate Laws Committee revised the Model Act again in 2016, "based on the 1984 version," but incorporating "amendments . . . [that] had been published in supplements" since then. *See* Corporate Laws Committee, *Model Business Corporation Act (2016 Revision)*, at v (ABA 2016) ["2016 MBCA Revision"]. The drafters hoped that the 2016 revision would "encourage state legislatures—in states that have already adopted all or a substantial part of the Model Act and in other states as well—to consider adopting the Model Act in full." *Id.* at 6. The 2016 revision contained many changes, some small, some large.

Two of the smaller changes are at issue here. They clarified that a corporation did not have to include shareholder email addresses either in shareholder lists prepared for a shareholder meeting or in the corporation's record of shareholders.[8]

---

*Bldg. Supply, Inc.*, 258 Va. 140, 151 (1991); *see also Fisher*, 289 Va. at 75 ("While the General Assembly has incorporated most of the MBCA's appraisal rights provisions into Virginia Code § 13.1-730, it has not incorporated the MBCA's provision granting appraisal rights to shareholders in the event of a change in corporate domicile.").

[8] The amendment to Model Act § 7.20 ("Shareholders' List for Meeting") added to subsection (a): "Nothing contained in this subsection shall require the corporation to include on such list the electronic mail address or other electronic contact information of a shareholder." 2016 MBCA Revision at 7-21. Similarly, the amendment to Model Act § 16.01 ("Corporate Records"), added to subsection (d): "Nothing contained in this subsection shall require the corporation to include in such record the electronic mail address or other electronic contact information of a shareholder." *Id.* at 16-2.

In 2019, the General Assembly amended the Virginia Stock Corporation Act to incorporate the 2016 Model Act revisions. 2019 Va. Acts ch. 734.[9] Those changes included verbatim the email-address amendments in §§ 7.20(a) and 16.01(d) of the 2016 Model Act.[10]

The 2019 bill kept the Saving Clause in Code § 13.1-771 in the Stock Corporation Act but moved it to subsection (F)(2). 2019 Va. Acts ch. 734, at 1693.[11] Because conforming changes to the Nonstock Corporation Act have not been enacted, the Saving Clause there remains as subsection (E)(2) of Code § 13.1-933.[12]

---

[9] The sponsor explained on second reading in the House that the bill "updates and modernizes the Virginia Stock Corporation Act to conform to the many provisions of the 2016 revision of the Model Business Corporation Act prepared by the American Bar Association's Business Law Section." Statement of Del. Kilgore, House of Delegates (Feb. 4, 2019), https://tinyurl.com/2fn7sexe, at 12:39:28 p.m.

[10] *See* 2019 Va. Acts ch. 734, at 1632 (Code §§ 13.1-661(A)) ("Nothing contained in this subsection shall require the corporation to include on such list the electronic mail address or other electronic contact information of a shareholder."); *id.* at 1693 (Code § 13.1-770(C)) ("Nothing contained in this subsection shall require the corporation to include in such record the electronic mail address or other electronic contact information of a shareholder.").

[11] That change accommodated the addition of new subsection E, providing that "The corporation may enforce reasonable restrictions on the confidentiality, use, or distribution of records described in subsection C." 2019 Va. Acts ch. 734, at 1693.

[12] In a departure from the 2016 Model Act, the 2019 Virginia amendment to Code § 13.1-771 in the Stock Corporation Act limited the Saving Clause for common-law inspection rights to "any corporation that *is not a public corporation*." 2019 Va. Acts ch. 734 (Code § 13.1-771(G)(2)) (emphasis added). A "public corporation" is "a corporation that has shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association." Code § 13.1-603. As Goolsby and Haas explain, "Because public corporations have a duty to disclose material information to shareholders under federal law, only shareholders of privately held corporations should need the additional protection provided by the exception." Goolsby & Haas, *supra*, § 18.1, at 439. They conclude that the Saving Clause for common-law inspection rights under the 2019 amendment applies only "to corporations that are not publicly owned." *Id.* As that issue is not presented here, however, we express no opinion on whether the 2019 amendment extinguished shareholders' common-law rights to inspect the records of a "public corporation."

*II.  Code §§ 13.1-845(A) and 13.1-933(B) do not require nonstock corporations to disclose member email addresses to requesting members.*

Petitioners claim that if a Virginia nonstock corporation decides to collect its members' email addresses, as the Association has done here, the corporation must

- disclose the members' email addresses as part of the "members' list" required to be produced for member meetings under Code § 13.1-845(A), and

- include the members' email addresses in the "record of its members," which is subject to disclosure to members who request it under Code §§ 13.1-932(C) and -933(B)(3).

Oral argument identified three possible theories for that claim, and we address them in turn.

*A.  The term "address" does not mean "email address."*

The first theory posits that "address" in Code §§ 13.1-845(A) and -932(C) includes a member's *email* address as well as any physical or postal mailing address.  At oral argument, however, petitioners expressly disclaimed that theory.  And for good reason.  As shown above, the requirement for a corporation to maintain shareholder or member addresses dates to 1903, when *address* meant "the address to which notice . . . of every kind may be mailed."  *See* 1903 Va. Acts ch. 270, § 49.  It took nearly another century for electronic mail to be invented and then become a standard means of communication.[13]  Yet the Virginia Nonstock Corporation Act has not been amended to specify that a member's "address" must or should include an *email* address.  That omission is conspicuous, given that the General Assembly has amended other provisions of the Act to facilitate electronic transmissions of notices and other communications.  *See* 2010 Va. Acts ch. 171.

---

[13] *E.g.*, Martin Campbell-Kelly & Daniel D. Garcia-Swartz, *The History of the Internet: The Missing Narratives*, 28 J. of Info. Tech. 18, 20, 27-28 (2013).

The dissent offers its own variation of this theory, but we find it implausible. The dissent would hold that "addresses" in Code § 13.1-932(C)) includes "every address kept" for every member, including email addresses. *Infra* at 28. Even if petitioners had come up with this theory on their own, we would think it unsound. The theory requires penciling in the word *all* before *addresses* in Code § 13.1-932(C). But the statute requires "a list of the names and addresses of all members," not "a list of the names and [*all*] addresses of all members," as the dissent would rewrite it. The dissent offers no sound rationale to make sense of this novel requirement. We fail to see the point of requiring a corporation to disclose upon request *all* addresses of each shareholder and member, including work addresses, home addresses, vacation addresses, email addresses, and any other addresses where the shareholder or member might be found.

### B. Statutory inspection rights do not include all member information in the corporation's records.

The second theory is petitioners' main argument. Petitioners claim that *any* member information collected by a nonstock corporation—including member email addresses—must be disclosed as part of the "members' list" under Code § 13.1-845(B), and as part of the "record of members" under Code § 13.1-933(B)(4). Petitioners could not identify any court in the country that has reached that conclusion. The Association recoils at petitioners' broad construction, which it fears would require it to disclose confidential alumni information. The Association tells us that other VMI-related associations share alumni information with it, so the Association does not necessarily own the information itself. The Association also worries that the threat of disclosure would chill alumni from sharing their confidential information in the first place.

We find no support for petitioners' theory in the text of Code § 13.1-845 governing the "members' list." The members' list is "an alphabetical list of the names of all [the corporation's] members who are entitled to notice of a members' meeting." Code § 13.1-845(A). The list must

- 15 -

"be arranged by voting group[] and show the address of each member." *Id.* The corporation must make the members' list "available for inspection by any member, beginning two business days after notice of the meeting is given for which the list was prepared and continuing through the meeting." Code § 13.1-845(B). Petitioners cannot point to any language in Code § 13.1-845 that suggests that *all* information a corporation keeps about its members must also be included in the members' list produced for a member meeting. The function of the members' list is obvious. It shows who is a member entitled to vote at the upcoming meeting. It is not a vehicle to discover all other information about a member that may happen to reside in the corporation's files.

Petitioners' argument is more plausible about the record of members described in Code §§ 13.1-932(C) and -933(B)(3), but we ultimately find it unpersuasive. Code § 13.1-932(C) requires every nonstock corporation to "maintain a record of its members, in a form that permits preparation of a list of the names and addresses of all members, in alphabetical order by class, if any." Members who qualify for statutory-inspection rights under Code § 13.1-933(C) are then "entitled to inspect and copy . . . (3) The record of members." Code § 13.1-933(B)(3).

Petitioners read *record of members* broadly to include *any* information that the corporation chooses to keep about a member. To petitioners, anything in a corporation's records about members must be disclosed. By contrast, the Association reads *record of members* as a term of art to mean simply the "list of the names and addresses of all members, in alphabetical order by class, if any."[14]

---

[14] The CEO described the "very detailed" alumni records kept by the Association, but he did not call it the "record of members." He and the parties referred to the electronic recordkeeping system instead as "VMI Ranks." And the evidence showed that the member list containing the members' names and addresses could be produced from the VMI Ranks database. In other words, VMI Ranks "maintain[s] a record of its members[] in a form that permits preparation of a list of the names and addresses of all members," Code § 13.1-932(C), as the statute requires.

- 16 -

The Association has the better reading. If the General Assembly had intended petitioners' reading, it would have written the statute differently. It would have required nonstock corporations in Code § 13.1-932(C) to maintain a record of members *that includes* the names and addresses of all members. Then a member would be entitled under Code § 13.1-933(B)(3)—if the "demand is made in good faith and for a proper purpose," Code § 13.1-933(C)(2)—to inspect the *entire* record of members, which would include but not be limited to the names and addresses of members.

Instead, the General Assembly required corporations to "maintain a record of its members, *in a form that permits preparation of a list* of the names and addresses of all members, in alphabetical order by class, if any." Code § 13.1-932(C) (emphasis added). The statutory text speaks to the *function* of what must be produced for inspection. The records must be maintained in a way that enables the corporation to produce the required list. In other words, the "record of members" that Code § 13.1-933(B)(3) entitles a nonstock-corporation member to inspect is simply the "record of its members" that § 13.1-932(C) requires the corporation to maintain for the purpose of producing the "list of the names and addresses of its members." It is not a generic term to describe *all* member information residing in the corporation's files.

This interpretation has the added benefit of avoiding the dangers of over-disclosure posited by the Association from granting statutory rights to inspect anything and everything that might be found in the corporation's confidential records about its members. Petitioners disclaim wanting such far-reaching information; they just want member email addresses. But they offer no limiting principle to cabin the broad sweep of the statutory inspection rights they assert here.

### C. The 2019 amendment to the Stock Corporation Act did not implicitly amend the Nonstock Corporation Act.

Petitioners also posit that member-email addresses must be disclosed to requesting members because the General Assembly amended the *Stock* Corporation Act in 2019 to negate

such a claim without making the same change to the *Nonstock* Corporation Act.  The dissent

embraces that argument too.  *Infra* at 24.  But we are not persuaded.

As described above, the 2019 amendments to the Stock Corporation Act implemented the

ABA Corporate Law Committee's changes in the 2016 Model Act.  Those changes made clear

that a stock corporation does not have to include shareholder *email* addresses either in the

shareholder list prepared for a shareholder's meeting, Code § 13.1-661(A), or in the record of

shareholders that must be maintained under § 13.1-770(C), and produced to requesting

shareholders under § 13.1-771(C)(3).  No parallel amendments were made to the Nonstock

Corporation Act.  So petitioners invite us to infer that the legislature must have intended

*nonstock* corporations to disclose their members' email addresses.

That inference is unwarranted for at least two reasons.

First, the 2019 amendments to Code §§ 13.1-661(A) and -770(C) of the Stock

Corporation Act were clarifying changes to *avoid* any suggestion that corporations must collect

and disclose email addresses as part of the record of shareholders.  It is true, of course, that

"[o]rdinarily, a statutory change will be deemed to bespeak a legislative intent to change the

law."  *Commonwealth v. Boone*, 30 Va. App. 439, 442 (1999).  But "that rule does not apply

where the change is plainly intended to clarify the meaning of the existing statute."  *Id.*  We

think the email-address clarifications fit that exception.

The parties have not cited any court ruling in the country that had interpreted *address* as

used in the Model Act before the 2016 amendments to mean a shareholder's *email* address.  The

2016 amendments to the Model Act, incorporated verbatim into the 2019 amendments to the

Virginia Stock Corporation Act, do not change the definition of *address*.  They simply negated

the potential misinterpretation that a shareholder's *address* could mean the *email* address.  *See*

notes 8 & 10, *supra*.  Those were "changes in form, which merely interpreted the existing law

- 18 -

and made it more specific. The changes 'were not changes of substance, which add rights to, or withdraw existing rights from, an original act.'" *Horner v. Dep't of Mental Health, Mental Retardation, & Substance Abuse Servs.*, 268 Va. 187, 193 (2004) (quoting *Boyd v. Commonwealth*, 216 Va. 16, 20 (1975) (per curiam)).[15] Indeed, the email-address changes in the 2016 Model Act were so trifling that the ABA's Corporate Laws Committee failed to mention them in the accompanying commentary. *See* 2016 MBCA Revision at 7-21 to 7-24, 16-1 to 16-4; Corporate Laws Committee, *Changes in the Model Business Corporation Act-Proposed Amendments to Chapter 16*, 71 Bus. Law. 547 (2016).

Second, petitioners and the dissent read too much into the fact that the General Assembly did not amend the Nonstock Corporation Act in 2019 when it amended the Stock Corporation Act. They view the legislature's failure to simultaneously add the email-address disclaimer to the Nonstock Corporation Act as a coded signal that nonstock corporations must disclose member email addresses upon request. We find that inference unreasonable.

For one thing, amending the *Stock* Corporation Act would have been a most unusual way to impose the opposite rule under the *Nonstock* Corporation Act. "Like Congress, the General Assembly does not generally 'hide elephants in mouse holes.'" *NAACP (Hanover Cnty. Chapter) v. Commonwealth ex rel. Va. State Water Control Bd.*, 74 Va. App. 702, 715 (2022) (per curiam) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)). Here, the mouse hole would not even be in the Nonstock Corporation Act, but in an adjacent chapter in Title 13.1.

---

[15] *Horner* was overruled in part on other grounds not relevant here. *See Woolford v. Va. Dep't of Tax'n*, 294 Va. 377, 390 n.4 (2017) (overruling *Horner*'s holding that "an appellee must assign cross-error to a lower tribunal's failure to rule on alternative grounds to preserve the issue for appellate review").

For another thing, changes to the Virginia Nonstock Corporation Act have typically lagged changes to the Virginia Stock Corporation Act. Six years passed between the 2016 amendments to the Model Act and the 2022 amendments to the Model Nonprofit Corporation Act. *See* Nonprofit Organization Committee, *Model Nonprofit Corporation Act* xx (4th ed. 2022) ("[T]he 2016 revision of the [Model Business Corporation Act] and the [Uniform Business Organizations Code] were the main reasons why the preparation of the Fourth Edition was undertaken."). The Model Nonprofit Corporation Act had not yet been updated in 2019, when Virginia updated the Virginia Stock Corporation Act. Courts should be cautious about inferring legislative intent from the General Assembly's inaction in this situation. What the Supreme Court has said about judicial review in areas of social and economic policy applies here as well: "the legislature must be allowed leeway to approach a perceived problem incrementally." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 (1993).

> D. *The General Assembly has not enacted the 2021 changes to the Model Act that would have entitled petitioners to the email addresses they seek.*

Finally, we note that the ABA's Corporate Laws Committee amended the Model Act in 2021 in a way that, if applied to the Virginia Nonstock Corporation Act, would likely give petitioners the statutory inspection rights to the member email addresses they seek here. *See* Model Business Corporation Act (2023 update), §§ 7.20(a)-(b), 16.01(d), 16.02(b)(4), (d), https://perma.cc/SSC6-RVK2. Under the 2021 revision to the Model Act, a stock corporation must include a shareholder's email address in the shareholders' list for a meeting if the corporation sends notices or other communications about the meeting to the shareholder by electronic mail. *See* Corporate Laws Committee, *Changes in the Model Business Corporation Act—Proposed Amendments to Sections 1.40, 1.41, 7.20 and 16.01 Relating to Electronic Notice*, 76 Bus. Law. 547, 554-56 (2021) ["2021 MBCA Amendments"]; Model Act (2023), § 7.20(a). If so, the corporation must make a copy of that list available to any shareholder who requests it,

but a shareholder who receives that list may use it "only for purposes related to the meeting . . . and must keep the information on that list confidential." Model Act (2023) § 7.20(b). The corporation must also include shareholder email addresses in the record of shareholders, *id.* § 16.01(d), and the corporation must maintain such records "in a manner so that they may be made available for inspection within a reasonable time," *id.* § 16.01(e). *See also id.* cmt. 4. A shareholder's statutory inspection rights under § 16.02 of the revised Model Act include access to "the record of shareholders," including shareholder email address, *id.* § 16.02(b)(4), but "[t]he corporation may impose reasonable restrictions on the confidentiality, use or distribution" of that information, *id.* § 16.02(d).[16] The ABA's Corporate Laws Committee explained that these changes were warranted because email use had become ubiquitous, "a conventional means of communication in business, with reliability comparable, if not superior to postal service." 2021 MBCA Amendments, *supra*, at 547.[17]

If the General Assembly had made those amendments to the Nonstock Corporation Act, then petitioners here would likely have had a statutory right to the email addresses they seek. But it is not for us to amend the Act by judicial fiat, let alone to decide whether doing so would be good policy for Virginia corporations. *See, e.g.*, *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 279 (2022) ("In Virginia, . . . judicial review does not evaluate 'the propriety, wisdom, necessity and expediency of legislation.'" (quoting *Willis v. Mullett*, 263 Va. 653, 658 (2002)). That decision must be left to the General Assembly.

---

[16] If preferred, a shareholder may direct the corporation *not* to use that shareholder's email address for notices and other communications. Model Act (2023), *supra*, § 16.01(d).

[17] Notably, however, the ABA's Nonprofit Organization Committee has not yet made those same changes to the Model Nonprofit Corporation Act. *See Model Nonprofit Corporation Act*, note 4 *supra*, §§ 401-403, 406, 720.

* * *

Although we hold that the Virginia Nonstock Corporation Act provides no *statutory* right to inspect and copy member email addresses, nothing we say here impairs a member's *common-law* right to seek such records independently. As noted above, Code § 13.1-933(E)(2) specifically preserves "[t]he power of a court, independently of [the Virginia Nonstock Corporation] Act, to compel the production of corporate records for examination." Members thus retain their common-law right "to inspect corporate books and records at a proper time and place and for a proper purpose," provided the right is "exercised in good faith and for some reasonable purpose germane to his interest." *Bank of Giles*, 199 Va. at 181. But petitioners here sued to enforce only their statutory rights, not their common-law rights. So we do not reach whether petitioners would have been entitled to relief if they had based their petition on Virginia common law.

## CONCLUSION

A member's statutory right to inspect a nonstock corporation's record of members under Code §§ 13.1-845 and -933(B)(3) does not include the right to inspect and copy member email addresses. Accordingly, the trial court correctly denied the petition for mandamus.

*Affirmed*.

Causey, J., dissenting.

I would hold that the record of members, at a minimum, includes names and addresses and that the meaning of "addresses," as stated in Code § 13.1-932(C), includes addresses recorded as part of a nonstock corporation's record of members, including email addresses. Therefore, I respectfully dissent because the circuit court erred by finding that Code § 13.1-933 does not require a Virginia nonstock corporation [VMI] to provide or disclose the recorded email addresses of its record of members.

The statute clearly entitles a member of a nonstock corporation to inspect and copy the record of members. The nonstock corporation is responsible for what names and addresses are included in that record of members. Once that record of members is created, corporations should not arbitrarily remove any of those addresses from the record of members. In other words, corporations must follow the statute and are not exempt when information included in the record of members conflicts with the internal ideals of the corporation. Both at trial and at oral argument before this Court, counsel for the appellants noted that the Association sells the email addresses in a book, the "Registrar of Former Cadets." At trial, counsel stated that for $150, a person could purchase the Registrar of Former Cadets which contains the "name, address, [and] email address" of alumni. Simply put, VMI chooses who will receive this information based on who can afford to do so. This was not the intent of the statute.

When interpreting a statute, "our primary objective is to ascertain and give effect to the legislative intent, which 'is initially found in the words of the statute itself.'" *Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 568 (2017) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)). The proper course is "to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and

- 23 -

promotes in the fullest manner the apparent policy and objects of the legislature." *Smith v. Commonwealth*, 66 Va. App. 382, 389 (2016) (quoting *Marshall v. Commonwealth*, 58 Va. App. 210, 215 (2011)). "[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." *Id.* at 388 (quoting *Williams v. Commonwealth*, 57 Va. App. 341, 351 (2010)). While the majority gives a curious, narrow, and strained historical overview of Virginia Stock Corporations versus Virginia Nonstock Corporations, the main issue here is focused only on the plain, obvious, and rational meaning of the current law affecting all Virginia Nonstock Corporations. The majority offers no sound rationale for substituting the nonapplicable statute for the applicable statute.

The statute is clear and the General Assembly has chosen to distinguish between Virginia Stock and Virginia Nonstock corporations clearly by addressing email address in one and not the other. Moreover, "[w]here the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to a statute or alter its plain meaning." *Couplin v. Payne*, 270 Va. 129, 137 (2005). Additionally, "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning." *Id.* "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Baker v. Commonwealth*, 284 Va. 572, 576 (2012) (second alteration in original) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 (2006)). Here, the statute and its language are unambiguous. Thus, "[w]hen interpreting a statute, we must give every word some meaning where possible." *Brandt v. Maha Lakshmi Motors, Inc.*, 48 Va. App. 493, 498 (2006). "To that end, we must evaluate each word within 'the entire phrase of which it is a part.'" *Id.* (quoting *Kohlberg v. Va. Real Estate Comm.*, 212 Va. 237, 239 (1971)). Moreover, as here, "when a particular word in a statute is not defined therein, a court must give it

its ordinary meaning." *Otey v. Commonwealth*, 61 Va. App. 346, 350 (2012) (quoting *Moyer v. Commonwealth*, 33 Va. App. 8, 35 (2000) (en banc)).

Although Code § 13.1-932(C) does not explicitly define "addresses," the Association's record collection practices and the Code's statutory construction render email addresses subject to nonstock corporation members' inspection and copy entitlement under Code § 13.1-933(B)(3). Black's Law Dictionary defines the term "address" as "the place where mail or other communication is sent." *Address*, *Black's Law Dictionary* (11th ed. 2019). At trial, David Lee Prasnicki, CEO of the VMI Alumni Association, testified regarding their record of member collection practices. When Prasnicki was asked if the Association kept email addresses as part of their record of members, Prasnicki answered "yes, we do." He testified that (1) the Association kept email addresses as part of their record of members and (2) email is the Association's primary means of communication. When asked if email was the Association's "primary means of communication," Prasnicki testified that "[i]f you mean primary, fifty-one percent of communications . . . [t]hen I'd say yes, it's probably email." Therefore, email addresses are part of addresses within the record of members because as defined, it is the place where the majority of VMI's other communication is sent.

In compliance with Code § 13.1-932(C), the Association must provide email addresses as part of its record of members. Because the Association not only collects email addresses as part of its record of members but regularly uses email addresses to send communications. While my colleagues argue that "[i]f the General Assembly had intended [this] reading [of the term record of members], it would have written the statute differently," "[t]his Court may not construe the plain language of a statute 'in a manner that amounts to holding that the General Assembly meant to add a requirement to the statute that it did not actually express.'" *Henthorne v.*

- 25 -

*Commonwealth*, 76 Va. App. 60, 67 (2022) (quoting *Commonwealth v. Amos*, 287 Va. 301, 307 (2014)). Again,"[w]here the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to a statute or alter its plain meaning." *Couplin*, 270 Va. at 137.

When "the General Assembly [chooses] not to include such limiting language in [a] particular statute, we must presume that it did so intentionally, and we have no authority to add words to the statute or to alter its plain meaning." *Haefele v. Commonwealth*, 75 Va. App. 591, 602 (2022). "To hold otherwise 'would have us write additional language' into the statutes 'not found in the text of the statute[s].'" *Canales v. Commonwealth*, 78 Va. App. 353, 366 (2023) (quoting *Henthorne,* 76 Va. App. at 67). "[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011); *see also Hollingsworth v. Norfolk S. Ry.*, 279 Va. 360, 366 (2010). The General Assembly did not intentionally amend the Virginia Nonstock Corporation Act. The "Corporate Records" requirement of the Virginia Stock Corporation Act was amended to include language pertaining to member addresses. *See* Code § 13.1-770 ("Nothing contained in this subsection shall require the corporation *to include in such record* the electronic mail address or other electronic contact information of a shareholder." (emphasis added)). The "Corporate Records" requirements of the Virginia Nonstock Corporation Act was not similarly amended. *See* Code § 13.1-932. We must presume that this choice was intentional.

The 2019 amendments to the Virginia Stock Corporation Act provide *only* that a stock corporation *need not keep member e-mail addresses as part of its record of members*—not that

- 26 -

those email addresses, if in fact recorded as part of the record of members, should be excluded when the record of members is provided for inspection. The majority argues, "the legislature must be allowed leeway to approach a perceived problem incrementally," and applies this Virginia Stock Corporation Act requirement to the Virginia Nonstock Corporation Act. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 (1993). The majority does so without any authority. The majority ignores precedent, case law and rewrites the statute with the terms of the Virginia Stock Corporation Act. Notably, to rewrite statutes as the majority would rewrite it here is not the job of the judiciary. The Virginia Stock Corporation Act requirement is clearly not a requirement of the Virginia Nonstock Corporation Act. Significantly, there is nothing in either Act that requires that when email addresses are kept as part of the record of members those email addresses should be excluded from copy and inspection. Unquestionably, the Nonstock Corporation Act does not exclude emails addresses as part of its record of members. VMI's record of members, collection practices, primary means of communication, and testimony demonstrate that email addresses are part of its record of members. Thus, the Association should have provided appellants with the email addresses of its members. This is not, as the majority contends, either in conflict with the 2019 amendments to the Virginia Stock Corporation Act or in support of the notion that members requesting inspection are entitled to all member information kept by the Association. At no time, did the appellants ask to inspect and copy more than names and addresses—the record of members.

The Association should have provided appellants with the email addresses of its members specifically because those addresses were recorded as a part of the record of members. The record of members reproduced for inspection and copying should not be manipulated based on

what a nonstock corporation chooses to provide.  Especially, when the information omitted from the record of members is readily available for purchase.

The statute does not specify exactly how the Association's record of members must be maintained, but it does specify that the record must be maintained in a "form that permits preparation of a list of the names and addresses of all members."  Code § 13.1-932(C).  Therefore VMI, as a nonstock corporation, is required to provide those addresses—which include email address—of its record of members for copy and inspection upon the request of a member.  Thus, regardless of where or how the information is stored, every address kept as part of the record of members, including the kept email addresses within the record, should be provided to a member who has the right to inspect such record of members in accordance with Code § 13.1-933(B)(3).

Here, the appellants satisfied the member requirements of Code § 13.1-933(C), entitling them to inspect and copy the record of members as provided in Code § 13.1-933(B)(3).  That record should include, as the statute requires, the names and addresses kept as part of the record of members.  As the Association testified, both electronic addresses and physical addresses are recorded as part of that record of members, and thus both the physical and electronic addresses of the members of the Association should be made available for copy and inspection.

Because email addresses are a place that communications are regularly sent by the Association, it does not defy logic, contrary to the majority's belief, that an email address is beyond the scope of the term "addresses" as used in Code § 13.1-932(C).  Additionally, to exclude email addresses produces the absurd result of VMI picking and choosing who gets email addresses.  The Association attempts to avoid providing the email addresses to appellants by arguing, on the advice of counsel, that it is not required to provide email addresses under Code

§ 13.1-933(B). Further, the Association contends that email addresses are not kept as part of the Association's record of members, but instead as part of its more extensive database, "VMI Ranks." However, at trial, when explicitly asked if the Association kept email addresses as part of their record of members, Prasnicki answered "yes, we do." Again, regardless of how the information is stored, the Association was required to provide a complete record of members for copy and inspection upon request. The record of members is available for all members not just for those who can financially pay for the information. The statute does not make a difference in who can pay and who cannot pay for the information. Accordingly, the email addresses collected by the Association as part of its record of members should have been provided to the appellants in accordance with Code § 13.1-932(C).

Appellants were denied their statutory right to inspect the record of members of the Association when the Association refused to provide the appellants with the email addresses of its members. Therefore, I would find that the circuit court erred by finding that Code § 13.1-933(C) does not require a Virginia nonstock corporation to provide or disclose the email addresses of its members if those addresses are kept as a part of the record of members. VMI's primary communication is sent using email addresses from the record of members, and those email addresses are provided to those privileged enough to afford the information. Thus, I would hold that the appellants have a statutory right to inspect and copy the Association's record of members, which includes email addresses, under Code § 13.1-932(C) and reverse and remand accordingly.